**Supreme Court**

No. 2010-434-Appeal.
(PC 05-3575)

Arthur W. Beauregard          :

v.          :

Charles E. (Rex) Gouin et al.          :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Arthur W. Beauregard        :

v.        :

Charles E. (Rex) Gouin et al.        :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  This case came before the Supreme Court pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided.  After carefully considering the record, the memoranda submitted to this Court on behalf of the parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown and that the appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the Superior Court's grant of summary judgment in favor of the defendants.

## I

### Facts and Travel

The underlying litigation[1] arose from a real estate dispute between plaintiff Arthur W. Beauregard and defendants Charles E. (Rex) Gouin, John Somyk, Gerald Plante, Jr., and Carmen

---

[1]    The appellees (viz., Attorney Paul A. Brule and the law firm of Walsh, Brule & Nault, P.C.) were not originally named as defendants; they were added as defendants in the course of

Plante (collectively, the codefendants). Mr. Beauregard owns an undeveloped parcel of land on Umbrella Way in the Town of Lincoln. The codefendants, who are neighbors of Mr. Beauregard, own a total of three separate parcels of land located on Umbrella Way; they also collectively own Umbrella Way, which is a private right of way.

At a deposition taken in connection with the underlying litigation, Mr. Beauregard acknowledged that he met with some of the codefendants in late 2002 to discuss his plans to develop his lot on Umbrella Way. At his own deposition in the underlying litigation, Mr. Somyk testified that he recalled Mr. Beauregard mentioning at that meeting that he would "need some of [Mr. Somyk's] property" in order to build a house on his own lot. Mr. Somyk said that Mr. Beauregard made this statement without making an offer to purchase any portion of the property. Mr. Somyk further testified that, when he and Mr. Gouin expressed concerns to Mr. Beauregard about the proposed development, Mr. Beauregard "brushed [them] off" and "acted like a typical * * * developer dealing with somebody that's an adverse possess[or] rather than a neighbor trying to work with somebody." Mr. Somyk also stated that the codefendants were concerned about a water line that Mr. Beauregard had installed and that may have gone through Umbrella Way.

It is undisputed that the codefendants eventually retained Attorney Paul A. Brule and the law firm of Walsh, Brule & Nault, P.C. (collectively, the attorney defendants) to represent them in connection with the property dispute involving Mr. Beauregard. Attorney Brule's sworn affidavit (submitted in connection with his motion for summary judgment) states that, at his first meeting with the codefendants, he learned that they "were concerned that various neighbors of theirs on Umbrella Way might attempt to claim access rights to Umbrella Way via adverse

the litigation of this case. Accordingly, we shall first set forth the essential facts relative to that underlying litigation before explaining the appellees' eventual involvement therein.

possession." Attorney Brule's affidavit further indicates that, after he presented the codefendants with three options[2] that could alleviate their concerns, they decided that the best option was to have him "prepare[] and record[] [a] Notice of Intent in the Land Evidence Records for the Town of Lincoln pursuant to the applicable statute, Rhode Island General Laws § 34-7-6."[3]

On July 29, 2004, Attorney Brule filed the notice of intent on behalf of the codefendants in the land evidence records for the Town of Lincoln. That document states, inter alia, that it is "From" the codefendants and "To" Mr. Beauregard. Additionally, there are handwritten

---

[2] Mr. Somyk testified during his deposition that the three options that Attorney Brule presented were (1) to "put a fence up," (2) to "send a letter every year," and (3) to record a notice of intent pursuant to G.L. 1956 § 34-7-6. Mr. Somyk stated that, after the codefendants had discussed the three options, they decided that the notice of intent "would be the best way" to deal with the issue.

[3] Section 34-7-6 provides a landowner with a statutory mechanism for interrupting claims for adverse possession. The statute reads in its entirety as follows:

> "Whenever the legal owner of any lands anticipates that any other person or persons may obtain the title to those lands, or any way, easement or privilege therein, by possession under the provisions of this chapter, he or she may give notice in writing to the person claiming or using the lands, way, easement, or privilege, of his or her intention to dispute any right arising from that claim or use; and the notice, served and recorded as hereinafter provided, shall be deemed an interruption of the use and prevent the acquiring of any right thereto by the continuance of the use for any length of time thereafter. The notice, signed by the owner of the lands, his guardian or agent, may be served by any disinterested person, making return under oath, on the party so claiming or using the property, his or her agent or guardian, if within this state, otherwise, on the tenant or occupant, if there be any; and the notice, with the return thereon, shall be recorded within three (3) months thereafter in the records of land evidence in the town in which the land is situated, and a copy of the record, certified by the recording officer to be a true copy of the record of the notice, and the return thereon, shall be evidence of the notice and of the service of the same."

This statute is entitled "Notice of intent to dispute interrupting adverse possession."

notations near the "From" and "To" references in the document; those notations indicate that the codefendants are "Grantee" and that Mr. Beauregard is "Grantor." In his affidavit, Attorney Brule states that the notations "were included solely for purposes of aiding the town clerk, who has to alphabetically index these various documents." The body of the notice of intent reads in its entirety as follows:

> "Please take notice that the undersigned hereby intends to dispute any right arising from your use of any part of the land which is of record owned by us and especially but without limitation, those lands immediately adjacent to our mutual boundaries."

The document is signed by Attorney Brule on behalf of the codefendants.

On July 12, 2005, Mr. Beauregard filed a complaint against the codefendants alleging various causes of action which are not relevant to this appeal. Later, Mr. Beauregard amended his complaint, adding the attorney defendants as parties and setting forth claims against the attorney defendants for slander of title and intentional interference with prospective advantage. Mr. Beauregard alleged that the codefendants and the attorney defendants "willfully and maliciously acted to delay, frustrate and interfere with" Mr. Beauregard's title to his property on Umbrella Way. Specifically, the slander of title claim alleged that the attorney defendants' "recording of the Notice of Intent on Plaintiff's Property constitute[d] a slander of title on the Plaintiff's Property." In the count alleging intentional interference with prospective advantage, Mr. Beauregard alleged that the notice of intent had "been a cloud on the title to Plaintiff's Property since the date of recording," which had "prevented Plaintiff from developing the Property."[4]

---

[4] In his answers to interrogatories in this case, Mr. Beauregard indicated that he could not build or improve his property until he received title insurance and a mortgage. He stated that his title insurance company required a release of the notice of intent before it would issue him title insurance. He also stated that his mortgage broker told him that his application would be denied due to the "cloud" on his title created by the notice of intent.

On September 24, 2009, the attorney defendants filed a motion for summary judgment and an accompanying memorandum of law. They argued that Mr. Beauregard's claims failed because there was nothing actionable about the recording of the notice of intent, which they pointed out was not recorded "on" Mr. Beauregard's property. On January 8, 2010, Mr. Beauregard filed an objection to the attorney defendants' motion for summary judgment. A hearing on the motion was held on February 26, 2010. After supplemental briefing by both parties, the motion justice held a second hearing on May 13, 2010.

On May 26, 2010, the motion justice issued a written order granting the attorney defendants' motion for summary judgment. In his order, the motion justice found that Attorney Brule had "established that he acted without malice or specific intent." The motion justice held that Mr. Beauregard's claim of slander of title—which requires a plaintiff to prove that a defendant uttered or published a false statement that was malicious—therefore failed. The motion justice also recognized that Attorney Brule's recording of the notice of intent under § 34-7-6 "did not slander the title of Mr. Beauregard's property" because "it concerned and protected the title to the property owned by those who recorded the notice"—viz., the codefendants. Finally, the motion justice held that the claim of intentional interference failed because "there was no intentional act or intentional interference."

The attorney defendants thereafter moved for entry of separate and final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. On October 6, 2010, the court granted that motion and entered final judgment in favor of the attorney defendants. Mr. Beauregard filed a timely notice of appeal. On appeal, Mr. Beauregard argues that the motion justice erred when he found (1) that "there [was] no dispute concerning the lack of [Attorney Brule's] malice" and (2) that "the title to [Mr. Beauregard's] land was never harmed."

## II

## Standard of Review

This Court recognizes that "[s]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." Takian v. Rafaelian, 53 A.3d 964, 970 (R.I. 2012) (internal quotation marks omitted); see also Estate of Giuliano v. Giuliano, 949 A.2d 386, 390 (R.I. 2008). We review a motion justice's decision to grant summary judgment in a de novo manner. DeMaio v. Ciccone, 59 A.3d 125, 129 (R.I. 2013). We apply the same standards and rules as did the motion justice. Generation Realty, LLC v. Catanzaro, 21 A.3d 253, 258 (R.I. 2011). In that regard, we adhere to the principle that summary judgment is appropriate only if "we conclude, after viewing the evidence in the light most favorable to the nonmoving party, that there is no genuine issue of material fact to be decided and that the moving party is entitled to judgment as a matter of law * * *." In re Estate of Dermanouelian, 51 A.3d 327, 331 (R.I. 2012) (internal quotation marks omitted); see also Tanner v. Town Council of East Greenwich, 880 A.2d 784, 791 (R.I. 2005).

It is also axiomatic, however, that we will not hesitate to affirm a grant of summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *." Lavoie v. North East Knitting, Inc., 918 A.2d 225, 228 (R.I. 2007) (internal quotation marks omitted); see also Tanner, 880 A.2d at 791. Accordingly, a "[c]omplete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Lavoie, 917 A.2d at 228 (internal quotation marks omitted).

**III**

**Analysis**

This is a straightforward case.  Simply put, it is our view that Mr. Beauregard may not recover on his claims for slander of title and intentional interference because the notice of intent had nothing to do with the property that Mr. Beauregard wished to develop.

**A**

**Adverse Possession**

We begin with a brief review of some basic principles of our adverse possession law.  In Rhode Island, a claimant may obtain title to property upon a showing that his use of the property was "actual, open, notorious, hostile, under claim of right, continuous, and exclusive for at least ten years."  Corrigan v. Nanian, 950 A.2d 1179, 1179 (R.I. 2008) (mem.) (internal quotation marks omitted); see also Cahill v. Morrow, 11 A.3d 82, 88 (R.I. 2011).  Much of this state's adverse possession law has been codified in chapter 7 of title 34 of the General Laws.  Within that chapter, the General Assembly has provided landowners of record with a statutory mechanism to interrupt potential claims of adverse possession—viz., § 34-7-6.  Pursuant to that statute, a landowner may interrupt such a claim by serving the rival claimant with a written notice of intent to dispute.  Such a notice may be employed "[w]henever the legal owner of any lands anticipates that any other person or persons may obtain title to those lands" by adverse possession.  Id.  According to the statute, the notice must inform the potential claimant of the landowner's "intention to dispute any right arising from [the claimant's] claim or use."  Id.  Importantly, the statute also requires the landowner to record the notice of intent within three months "in the records of land evidence in the town in which the land is situated."  Id.

**B**

**The Slander of Title Claim**

Mr. Beauregard's slander of title claim is based on the attorney defendants' filing of the notice of intent; he alleged that the Notice "constitute[d] a slander of title on" his lot. A slander of title action requires a plaintiff to prove (1) that the alleged wrongdoer uttered or published a false statement about the plaintiff's ownership of real estate, (2) that the uttering or publishing was malicious, and (3) that the plaintiff suffered a pecuniary loss as a result. See Eastern Motor Inns, Inc. v. Ricci, 565 A.2d 1265, 1273 (R.I. 1989); see also Narragansett Improvement Co. v. Wheeler, 21 A.3d 430, 441 (R.I. 2011); Arnold Road Realty Associates, LLC v. Tiogue Fire District, 873 A.2d 119, 125–26 (R.I. 2005); 50 Am. Jur. 2d Libel and Slander § 524 at 899 (2006) ("Slander or disparagement of title occurs when a party maliciously makes false statements about another party's interest in property, which then results in the owner suffering a pecuniary loss or special damages.").

The notice of intent in this case cannot provide the basis for a claim of slander of title because it does not contain any assertion whatsoever that could properly be considered a "false statement[] about [Mr. Beauregard's] ownership of real property." See Keystone Elevator Co. v. Johnson & Wales University, 850 A.2d 912, 923 (R.I. 2004) ("Slander of title occurs when a party maliciously makes false statements about another party's ownership of real property, which then results in the owner suffering a pecuniary loss."). It will be recalled that the notice of intent reads as follows:

> "Please take notice that the undersigned hereby intends to dispute any right arising from your use of any part of the land which is of record owned by us and especially but without limitation, those lands immediately adjacent to our mutual boundaries." (Emphasis added.)

- 8 -

That statement unambiguously indicates that the codefendants are preemptively seeking to protect their rights to "the land which is of record owned by [the codefendants]." In no way does the notice of intent slander or cast doubt upon Mr. Beauregard's title to <u>his</u> property.[5]

Mr. Beauregard argues that the notice of intent "was written so as to ensure that [it] would be recorded as against the Beauregard lot." However, under § 34-7-6, a notice of intent is not recorded "on" or "against" a property; the statute simply requires that the notice "<u>be recorded</u> within three (3) months." (Emphasis added.)[6] The statute provides a way for property owners to interrupt potential claims for adverse possession that might be accruing <u>with respect to their own property</u>. By its plain terms—and in accordance with the statute—the notice of intent prepared by Attorney Brule references only his clients' property.

There simply is no statement in the notice of intent—false or otherwise—about the lot that Mr. Beauregard owned and wished to develop. Mr. Beauregard therefore failed to establish

---

[5]      In support of his argument, Mr. Beauregard points to our decision in <u>Louttit v. Alexander</u>, 44 R.I. 257, 260, 116 A. 882, 883 (1922) where we held that a notice of intent was "a cloud upon the [plaintiff's] title which would be likely to seriously interfere with his rightful enjoyment of his estate * * *." There is, however, a crucial difference between <u>Louttit</u> and Mr. Beauregard's case. The defendant in <u>Louttit</u> recorded a notice of intent which asserted his right <u>to the plaintiff's property</u>. In Mr. Beauregard's case, the notice of intent simply asserted the codefendants' right to <u>their own property</u>. The notice of intent at issue in the present case says absolutely nothing about Mr. Beauregard's property.

[6]      Our analysis is not affected by the hand-written notations about "Grantor" and "Grantee" on the notice of intent. The General Assembly "has prescribed the duties of a recorder of deeds to record instruments and has specified what is required for a deed to be a legally sufficient instrument." <u>Bionomic Church of Rhode Island v. Gerardi</u>, 414 A.2d 474, 476 (R.I. 1980). Specifically, a town clerk has a statutory duty to "make and keep a separate alphabetical general index of all deeds, mortgages, and other instruments recorded * * *." General Laws 1956 § 34-13-5(a). Mr. Beauregard argues that, as a matter of law, notices of intent should never be indexed under the heading of "Grantor." Whether or not that is an accurate statement of the law (and we need not pass upon that issue), it was the duty of the town clerk—not Attorney Brule—to record and index the notice of intent in accordance with the General Laws. See <u>Gerardi</u>, 414 A.2d at 476 (noting that the town clerk is "bound to comply with the applicable [recording] statutes").

an essential element of his claim of slander of title; the notice of intent was not a "false statement about [Mr. Beauregard's] ownership of real estate." See Arnold Road Realty, 873 A.2d at 125 (internal quotation marks omitted). The motion justice recognized as much,[7] noting:

> "Obviously, the recording of the lien did not slander the title of Mr. Beauregard's property, rather it concerned and protected the title to the property owned by those who recorded the notice—Attorney Brule's own clients."

Mr. Beauregard argues that the notice of intent had a collateral effect on his property because a title insurer and a lender made adverse decisions based on the document. It may well be true that the title insurer and the lender misinterpreted the notice of intent and therefore made decisions that prevented Mr. Beauregard from developing his lot. However, that does not change the fact that the notice of intent does not contain a false statement about Mr. Beauregard's lot. The plain, blunt fact is that Mr. Beauregard has failed "to make a showing sufficient to establish the existence of an element essential to [his] case * * *." See Lavoie, 918 A.2d at 228 (internal quotation marks omitted). It follows that the attorney defendants were entitled to summary judgment with respect to the claim of slander of title.

## C

### The Intentional Interference Claim

A similar analysis applies to Mr. Beauregard's second claim. To recover on a claim of intentional interference with prospective advantage, a plaintiff must show "(1) the existence of a business relationship or expectancy, (2) knowledge by the interferer of the relationship or

---

[7] Mr. Beauregard argues that the motion justice erred when he ruled that there was "no dispute concerning the lack of [Attorney Brule's] malice." Because we are affirming the grant of summary judgment based on the fact that Mr. Beauregard failed to show that the attorney defendants made a false statement about Mr. Beauregard's ownership of the property which he wished to develop, we need not address the malice issue. See Lavoie v. North East Knitting, Inc., 918 A.2d 225, 228 (R.I. 2007) (recognizing that this Court may "affirm summary judgment on grounds other than those relied upon by the motion justice").

expectancy, (3) an intentional [and improper] act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff." Avilla v. Newport Grand Jai Alai LLC, 935 A.2d 91, 98 (R.I. 2007) (internal quotation marks omitted); see also Ims v. Town of Portsmouth, 32 A.3d 914, 925–26 (R.I. 2011).

The notice of intent cannot be said to constitute an "improper act of interference." See Avilla, 935 A.2d at 98 (internal quotation marks omitted). Attorney Brule's clients told him that they were concerned about potential adverse possession claims. In filing the notice of intent, Attorney Brule alleviated his clients' concerns by employing a procedure specifically made available by the General Assembly. All that the notice of intent did was to assert the codefendants' right to their own property. See Belliveau Building Corp. v. O'Coin, 763 A.2d 622, 629 (R.I. 2000) ("[A] good-faith assertion of a colorable property interest, when properly communicated by appropriate means (such as the filing of a truthful notice in the land-evidence records), is privileged and constitutes a defense to a claim of tortious interference with contract * * *."). There is nothing "improper" about landowners asserting their right to whatever property it is that they own. Accordingly, it is our view that the attorney defendants were entitled to summary judgment with respect to the intentional interference claim.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the Superior Court's grant of summary judgment in favor of the attorney defendants. The record in this case may be remanded to that tribunal.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    Arthur W. Beauregard v. Charles E. (Rex) Gouin et al.

**CASE NO:**    No. 2010-434-Appeal.
(PC 05-3575)

**COURT:**    Supreme Court

**DATE OPINION FILED:**  May 28, 2013

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice William P. Robinson

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Jeffrey A. Lanphear

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Michael A. Kelly, Esq.

For Defendants:  Brian C. Newberry, Esq.